So we'll proceed to 24-3037, U.S. v. Apperson. Ms. Miller. May it please the court, Mr. Apperson appears by counsel, Wendy Miller. The issue on appeal today is whether the district court abused its discretion in denying Mr. Apperson's motion to reduce his sentence filed under the First Step Act. In his motion, he advanced several reasons that he alleged constitute extraordinary and compelling reasons for granting the reduction. And even if the individual factors don't themselves constitute extraordinary and compelling reasons, that collectively the factors advanced do. The first factor that he advanced was his age. At the time that he initially filed his petition, he was 67. He's now 69 years of age. His age in combination with the years of service that he served on his sentence, he had 17 years of imprisonment along with four additional years in custody on home confinement, which was granted in 2020 at the height of the COVID pandemic. And then other factors that he advanced was the disparity that resulted when Codefendant Picard was granted a reduction. Now, Codefendant Picard had different health issues. His health issues were more significant, more serious, and he was granted a reduction to time served in 2020. However, granting that reduction has now resulted in Mr. Apperson, who was convicted of the same offense but has no criminal history. Having served, his end date for his sentence will be 2027. And so since 2020, he's done four extra years of his sentence. And if he does three more, that's an additional seven years, then he would have to do than Mr. Picard. And he's also... Ms. Miller, your argument about the sentence disparities, and here under the 3553A factor to avoid unwarranted sentence disparities, does it really just boil down to his codefendant who had a larger sentence, who got life, who may have been more culpable in the underlying case? He's been released, so Mr. Apperson should be released? Or do you also have an argument to say in comparable cases looking at nationwide data for this particular controlled substance, that if you do not grant compassionate release to Mr. Apperson, the result is that it is a sentence disparity because, like defendants, when you look at the data, are getting less time than Mr. Apperson received. It's a disparity based on the disparity caused by the granting and the reduction of Mr. Picard's sentence. So it may or may not be the type of disparity that 3553A factors contemplated, the type of disparity where you're looking at on a national scale of what kind of sentence defendants got that were convicted of the same offense with the same history, but it's a different kind of disparity. And so that was one of the things that we were asking the district court to consider this factor in addition to several other factors. The district court indicated in the decision to deny his motion to reduce his sentence that rehabilitation alone is not enough to grant compassionate release, and that's been clearly established. It's the law. And that's not what we're arguing, is that rehabilitation by itself would be a reason to grant compassionate release. It's just that the rehabilitation, number one, is a little bit more significant than the normal rehabilitation efforts that you see, and collectively with the other factors, with his age, with the disparity, and the other factors advance should constitute extraordinary and compelling reasons to grant the motion for reduction. Well, you start off climbing uphill, which is to say abuse of discretion, and you say there are extraordinary, compelling circumstances. The district court said not, and we go with the district court, unless you can show an error of law or some manifest unreasoning opinion. Is that right? Absolutely. And so are you focused exclusively on the error of law piece of that? No. We are asserting that there were some facts that were overlooked by the district court too. Overlooked or weren't resolved the way that you wanted? Because he did look at Mr. Picard. Correct, but on the rehabilitation, it doesn't appear to me from the decision that he considered that Mr. Apperson, not only did he complete coursework and he taught classes for three years, but he also participated in a UNICOR program where he was able to assist the military using AutoCAD to draft numerous drawings to provide for the military, and the supervisor, Mr. Apperson's supervisor was so pleased with his work that he agreed to support him for a transfer to Colorado from Victorville. So his rehabilitation efforts, when you consider it, not a single disciplinary infraction while he was in custody for that many years, teaching classes for three years, that type of background I don't think is average. I don't think that that's maybe the necessary experience of the general inmate who takes classes and makes improvements and makes rehabilitative efforts, but I think it's a little bit more. Counsel, can I also ask you how we weigh the fact that Mr. Apperson is on home confinement, even though he, by law, is still serving a sentence within the Bureau of Prisons? In fact, he's not in the Bureau of Prisons, as I understand it. He's at home subject to conditions, and I'm going to assume, but I don't recall the briefs of the record what those conditions were, but they probably allow for him to leave his home for purposes of medical treatment, which I think is salient here if you're saying that he has medical conditions that he requires treatment for, but also for things like employment, usually for the practice of religious activities, things of that nature. So how do we contemplate whether his current situation is so extraordinary and compelling when we look at factors such as age and health when, in reality, he's at home and is permitted to leave to get treatment for things like medical conditions? Well, Your Honor, he's home, but he's still in custody subject to revocation and subject to being placed back in prison, so he is still in custody. Yes, he has the benefit of being at home, but he is in custody, and so he still continues to serve his time, and he has GPS. He does get to go to work, go to appointments, medical appointments, and receive treatment, but home confinement is still custody, so he won't be done with his sentence until 2027, and then he would start the five-year process of supervised release at the conclusion of the home confinement. You said he can go to work. Is that right? Yes. Excuse me. Does the record indicate what the conditions on his home confinement are? Is there something in the record or something available that we could look at to see what those conditions are? I would have to look for that and get back to the court because I don't know that there is. But you're representing that he is allowed to go to work? Yes. Do you know what sort of job he has and how often he goes to work? He works at a theater company. I can't tell you the hours or the days, and then he does attend medical appointments, and I believe he's still on GPS, and I don't know. You mean an ankle monitor? Yes, and he's done that for four years since 2020, and if we do it for another three years, that's a service of about 33% more of a sentence than a co-defendant that has criminal history points. Some of what the district court said in its order was that under the Sentencing Commission's policy, under the age factor, the district court tended to focus on the fact that he doesn't have a serious medical issue, and our argument was that while he doesn't have the serious medical issue, he does have some medical issues. While maybe not qualifying by themselves, if you consider all the factors collectively, such as his age, the amount of time that he served on his sentence, his rehabilitation, all of these factors under 1B.1.13, under the section of other reasons, I think fits right in with the commission's policy. As far as the 3553A factors, yes, this was a serious offense, but he's also done a lot of time and is going to do a lot more time if he's unable to get a reduction. So while he doesn't have the health issues, he does have significant employment, significant rehabilitation, significant experience with assisting the military that I think is unique, and I do think constitutes extraordinary reasons to grant a reduction in sentence for him. On that point, and following up with Judge Federico's question, have you located any authority, because I've not, in which there has been home release, release to home confinement under, I guess, 3624 section, and the court has still found extraordinary and compelling circumstances for 3582C? Or would this be the first time that that had been granted by a court? It would be the first time that I confined in the Tenth Circuit, and I do think in our reply brief we cited a case discussing that home confinement was still custody, but I don't necessarily know that it answers your question. Was it this case that said home confinement is custody, was that a case involving compassionate release? Yes, and it was a Sixth Circuit case, I believe. It was cited in the reply brief. And I can see that I'm running out of time. With regard to whether Mr. Apperson showed extraordinary and compelling reasons to grant his motion, I think the answer is collectively yes. If we pigeonhole factors, then there's going to be a question of whether that's not. Collectively, I think he did. I think that his reasons for reduction fit within the Sentencing Commission's policy, and I think are supported overall by the 3553A factors. And I can see I'm getting to the end of my time, unless the court has questions. Thank you. Mr. Magg. Good morning, Your Honors. May it please the Court, Jared Magg on behalf of the United States. Judge Phillips, I want to answer your question directly. This is the first case that the Tenth Circuit has addressed, whether or not an individual can be given compassionate release while they're on home confinement. Any other courts that you're aware of? I didn't find any. I'm not saying that – and let me give you an example. In many of these instances where a court might otherwise release somebody from home confinement, the government generally does not appeal those decisions. In many of those instances, there are times when the parties agree that it is appropriate at that time for various reasons, but I could not find any other circuit case that is addressing this particular point. Various reasons meaning imminent death or something like that? A lot of it is health-related. You can imagine that the bulk of all of the compassionate release cases that come to the U.S. attorneys are individuals who are in the prison environment, coming out of the harsher conditions of prison. So it would be a hard, I think, a more difficult time for a defendant to establish that they are in dire circumstances while on home confinement, simply to be released to supervised release. So it could be done, but it's harder? We would submit it would be extraordinarily hard to establish the reasons to be released into supervised release from home confinement. Certainly I could – and this gets to the equivalency issue. The defendant has tried to sort of lay the groundwork for the argument that various other defendants have been released for compassionate release for various reasons, and that somehow because they did, he should also be released. Compassionate release defendants come to the court on their own merits. It's hard to have an equivalency argument because what the courts are looking at in compassionate release cases are so different than what they're looking at in a trial context or a sentencing context. They're looking at medical records. They're looking at family issues, things that they wouldn't otherwise really address in the sentencing context. So when they come to the court on compassionate release under 3582C2 or C1A1, they are standing on their own merits, and that's a good example here. Picard was released because of the stage 3 kidney issues that he was suffering. At the same time, his age was different. Judge Martin, being a different judge in this circumstance, found that he met the compassionate release at the time at the height of the COVID pandemic. Mr. Apperson was given release independent of any claim that he should have been released. He was given the privilege of being released. He hadn't filed for compassionate release. He just met the criteria. He is now on home confinement. He has apparently today now conceded the fact that he's not suffering from any medical concerns, as I heard counsel say. So he falls outside of B2. He certainly doesn't fall within B1. But B1 is reserved for those individuals who suffer the most extreme medical circumstances that would otherwise give them a valid reason for compassionate release. So if the defendant has now conceded that his health is no longer an issue, B2 is out of the question. B5 is really the only remaining policy factor that he can rely on under the circumstances, and independently he cannot find any sort of issue here of similar gravity to individuals who fall within the categories of B1 through B4. I mean, at bottom, isn't his argument that, you know, this is a, I think, maybe two-defendant indictment and the co-defendant who was much more culpable is released. And I get your point about the compassionate release cases come to the court on their own merits, with their own personal circumstances, whether it be health, age, family, or otherwise. And I read your response brief to say that the law says you're looking not at individuals for comparison purposes, and particularly not co-defendants. But can the district court consider that at all? Oh, I think the court can consider a lot of factors, but I think it would fall within the 3553A factors in that circumstance. Again, the precedent is legion in the areas of 3553A6 that what they're talking about in those circumstances are at the sentencing phase, not in the compassionate release phase, but would otherwise look at a national sort of statistical analysis to whether or not the defendant falls or falls outside of what individuals might normally get a reduction. They've not done that here. They're simply trying to use that Mr. Picard was the reason he should be equally treated under the circumstances. And that just simply does not fit or otherwise is contemplated by the statute or the policies under the guidelines. Let me – I wasn't sure I understood what you said earlier, so I'll ask you to clarify, at least maybe you were very clear, but to clarify it for me. I thought you said two things. One, that it would be rather extraordinary to grant compassionate release to someone on home confinement. But also I thought you had said earlier that there are occasional, at least, circumstances in which the government agrees to that. Did I – were you talking about – are there cases where the government agrees that someone on home release should just get compassionate release on home confinement? If I remember from my caseload, which I will tell you is in the several hundreds, I can only remember at least one case where that was under consideration as to whether or not someone – and I think they cited it as the triplet case that was before Judd Robinson at the time, where he was also on home confinement. And otherwise, Judge Robinson found that he was eligible for release, to supervised release. The government did not appeal that decision. So what I'm not saying is that this is uniform across the United States in any circumstance. But our position is when someone is released to home confinement, under those circumstances, BOP, at least at the height of COVID, made the decision that this individual, based largely upon the fact that they were not a danger to the community, was released to home confinement. Now, to answer Judge Phillips' question, they do remain in custody. If Mr. Apperson were to violate, he would go back into BOP custody. He would not suffer the same sort of procedural mechanism that you would otherwise have in a supervised release case. So he would go back in. So he is, as it were, the sword of Damocles is hanging over him in a much different way. He would like to be removed from that and placed in supervised release. Because, as I took their argument, as we articulate in our brief, so much of their argument centers on the fact that he should go to supervised release because he has done so well while on home confinement and otherwise performed quite well when he was in custody. That doesn't win the day. So when someone gets compassionate release, there's still a supervised release component? If he is released from custody, because right now he is in BOP custody, if the court grants it, they would have granted time served, he would have immediately started his five-year term of supervised release. So essentially what I gather, and quite frankly I think this is a fair statement, the defendant wants to be released to less restrictive measures. When he releases to supervised release, he's likely to have his electronic monitoring taken off. He's likely to be given less travel restrictions. So many of the things that he is under BOP policy while he is in custody on home confinement will not apply to him on supervised release. That is an attractive thing under the circumstances. So we submit under the circumstances here, I think, to get back to Judge Hart's question and circle back to the issue of we believe someone who is in home confinement would have to establish, at least under the guidelines and the policies, far more than what the defendant has done in this case. I'm struggling to try to find a situation where someone could say that their medical circumstances would not be equally attended to on home confinement and supervised release. So for example, if Mr. Apperson were to become ill, there's nothing that stops him from going to the hospital, be it him on confinement or be it him on supervised release under the circumstances. So to try to establish a movement from home confinement to supervised release under the circumstances, our position is that the defendant is relying solely on the defendant's good behavior. Unless the court has any further questions. Thank you, counsel. Thank you. You have some time if you want. You don't have to take it, but you're entitled to it. And I did not reserve rebuttal time, but I just wanted to point out some citations in the reply brief, where it looks like the Tenth Circuit and USVCO indicated that the confinee is in the custody of the Bureau of Prisons up to and until the end, and such includes the time spent in home confinement. There was also a Sixth Circuit case. You said you had cited that in the reply brief. In the reply brief as well. Okay. Let me ask you this. Did Mr. Magg understand you correctly that you're not claiming that there's a medical concern with Mr. Epperson at this time? What we're claiming is that the medical concerns likely don't reach the seriousness of what the policy requires. Not for the court to not consider them, which every case is individual, so I would think that the court would consider it anyway. But maybe if it doesn't meet the policy, then collectively with all other factors, it would still constitute reason for reduction. Thank you. Thank you. Thank you, counsel. Case is submitted. Counselor excused, and we'll turn.